**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

ALBERTO MONZON,
                *Defendant-Appellant.*

No. 03-30497

D.C. No.
CR 02-0374-23 JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted
July 14, 2005—Seattle, Washington

Filed December 7, 2005

Before: A. Wallace Tashima, Richard A. Paez, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Callahan

15783

**COUNSEL**

Catherine L. Floit, Seattle, Washington, for the defendant-appellant.

John McKay, United States Attorney, and Douglas B. Whalley, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

Alberto Monzon appeals his conviction for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Monzon contends that the district court accepted his guilty plea in violation of Rule 11 of the Federal Rules of Criminal Procedure and that the error affected his substantial rights. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

**BACKGROUND**

In November 2001, law enforcement officers began investigating a drug trafficking organization led by Juan Godinez-Vasquez. Through a court-authorized wiretap, officers determined that Monzon was involved with that organization. Federal agents executed a search warrant at Monzon's residence. Monzon was in bed at the time. The agents seized a loaded 9-millimeter semi-automatic handgun from under the bed-

covers, $3,060 in cash from a coat in the closet, and 248.9 grams of heroin in an Enfamil baby formula can wrapped in electrical tape from the closet shelf.

Monzon was charged in three counts of a multi-count indictment with: (1) Count 1, conspiracy to distribute cocaine, heroin, and methamphetamine; (2) Count 20, possession of heroin with intent to distribute, in violation of 21 U.S.C. § 812; and (3) Count 21, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Count 21 alleged that Monzon "knowingly and intentionally did possess a firearm, that is, a Pietro Beretta 9mm model 91 handgun, in furtherance of a drug trafficking crime, that is, possession of heroin with intent to distribute, as charged in Count 20, and conspiracy to distribute cocaine, heroin, and methamphetamine, as charged in Count 1."

At one point, Monzon moved to have his counsel, Michael Danko, discharged and to have his originally appointed counsel re-appointed. According to the motion, Monzon had twice indicated that he intended to accept the government's plea offer, but the first time, changed his mind during the plea colloquy, and the second time, decided he was not going to enter a plea upon arriving in court. The motion explained that communication between Monzon and Danko had broken down. At the hearing on the motion, the court reasoned that, if the court again permitted a change of counsel, the new attorney would be unprepared for trial, which was scheduled to commence the following week. It therefore denied Monzon's request for new counsel.

Monzon then entered a guilty plea to Counts 20 and 21 of the indictment: possession of heroin with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. Count 1, the conspiracy count, was dismissed. At the plea hearing, conducted by a Magistrate Judge, Danko explained that his latest discussions with Monzon had been "amicable and complete" and that Monzon intended to go

ahead with the guilty plea. The government summarized the charges and penalties, stating that Count 20 carried a term of imprisonment of not less than five and up to 40 years, and that Count 21 required a term of imprisonment of not less than five years, to be served consecutively. Monzon stated that he understood the two charges and their maximum penalties.

The Magistrate Judge advised Monzon that, if there were a trial on Count 21, the government would be required to prove that Monzon commited a drug trafficking offense and that Monzon knowingly possessed a firearm in furtherance of the drug trafficking offense. Monzon stated that he understood the elements of the offenses charged. The Magistrate Judge then asked Monzon if he understood that by pleading guilty, he would be giving up his right to require the government to prove those elements, and Monzon said that he did. The Magistrate Judge asked, "Is that what you wish to do?" Monzon replied, "Yes."

Next, the Magistrate Judge conducted a colloquy to determine whether Monzon agreed to the facts stated in the plea agreement. The following exchange occurred between the Magistrate Judge, Monzon, and Assistant United States Attorney Douglas Whalley:

| Court: | Did they come into your house in the nighttime or sometime on November 6 of 2002 and search your house? |
| --- | --- |
| Defendant: | Yes. |
| Court: | And at that time did they find in your bedroom 248.9 grams of heroin? |
| Defendant: | Yes. |
| Court: | Did they also find a loaded Beretta, nine-millimeter, semiautomatic hand- |

gun in the bed where you were sleeping?

Defendant:    Yes.

Court:        Did you in fact possess that firearm in part to protect those drugs?

Defendant:    No. That's not it. I just had it because somebody sold it to me cheap.

Court:        Mr. Whalley, what would the government's evidence show on the use of the firearm in connection with the offense?

Whalley:      Simply that he had it in his possession in the bedroom with the drugs. That phrase is more a legal conclusion than it is a finding of fact, Your Honor, so I'm willing to accept the plea without item B, why he protected it, why he possessed it.

Court:        Are you suggesting we strike that from the plea agreement?

Whalley:      If the defendant does not admit it.

Court:        Mr. Monzon, why did you feel that you needed or wanted to have a firearm?

Defendant:    Because I always liked them and they sold it to me for cheap and, you know, I just bought it. I didn't buy it because of the drugs. It doesn't have anything to do with that.

Court:          Mr. Whalley, maybe we better strike
                that. Any objection, Mr. Danko?

Danko:          No, Your Honor.

Court:          Mr. Monzon, is it true that the drugs
                were in your bedroom and the gun was
                also in your bedroom?

Defendant:      Yes.

The plea agreement was then amended by deleting the sentence that stated: "(b) Defendant possessed the firearm in part to protect the drugs." As amended, the plea agreement's statement of facts stated only:

(a)   On November 6, 2002, law enforcement agents executed a search warrant at Defendant's residence. . . . In the bedroom, where Defendant was found sleeping, agents recovered 248.9 grams of heroin. Agents also recovered a loaded Beretta 9 mm semi-automatic handgun in the bed where Defendant was sleeping.

(c)   The parties agree, and will recommend that the Court find, that the amount of heroin involved in the offense was 248.9 grams of heroin.

Monzon then pled guilty to Counts 20 and 21. The Magistrate Judge found that Monzon's guilty plea was knowing and voluntary and was "supported by an independent basis in fact," and set a date for sentencing before the district court. The district court entered an order accepting Monzon's plea and sentenced Monzon to a 120-month term of imprisonment and four years of supervised release. This timely appeal followed.

## STANDARD OF REVIEW

When a defendant fails to object to a district court's asserted Rule 11 error, our review is limited to plain error. Fed. R. Crim. P. 52(a)-(b); *United States v. Dominguez Benitez*, 124 S. Ct. 2333, 2338 (2004). In assessing the effect of Rule 11 error, we must look to the entire record and not to the plea proceedings alone. The error requires reversal only if it affected the defendant's substantial rights. *Id.* We exercise our discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993).

## ANALYSIS

On appeal, Monzon first contends that the district court violated Rule 11 of the Federal Rules of Criminal Procedure by failing to establish a factual basis for his guilty plea to possession of a gun in furtherance of a drug trafficking crime and in failing to ensure that he understood the charge against him and that the plea was voluntary. Monzon further argues that the Rule 11 error is not harmless because it affected his substantial rights. Second, Monzon contends that, in the absence of a conviction for possession of a gun in furtherance of a drug trafficking crime, he would be eligible for a safety valve reduction in his sentence pursuant to 18 U.S.C. § 3553(f).

## I. Rule 11 Error

**[1]** The government concedes that the district court erred by failing to determine that there was a factual basis for Monzon's guilty plea to possession of a gun in furtherance of a drug trafficking crime.[1] Because the government concedes

---

[1]In its brief, the government states:

Count 21 charged Monzon with possession of a firearm in furtherance of a drug trafficking crime. The modified Plea Agree-

that the district court's acceptance of Monzon's plea in violation of Rule 11 was plain error, we proceed to the issue of whether the error affected Monzon's substantial rights.

To obtain reversal of a conviction based on Rule 11 error, the defendant must show, based on the entire record, that the error affected his substantial rights. *Dominguez Benitez*, 124 S. Ct. at 2338-39. The defendant "must show a reasonable probability that, but for the error, he would not have entered the plea."[2] *Id.* at 2340. "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.* (internal quotation marks and citations omitted). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Id.* at 2340 n.9.

**[2]** In *Dominguez Benitez*, the Court explained that, to determine whether the Rule 11 error affected the defendant's substantial rights, we should consider "record evidence tend-

ment did not provide a complete factual bases in support of Monzon's plea of guilty to Count 21, although it came very close through Monzon's admissions that he possessed one-quarter kilogram of heroin in his bedroom, and slept with a 9 mm Berretta sem-automatic handgun in his bed in the same room. ER 34-35. The error here is plain. However, the court's failure to meet this Rule 11(a)(3) requirement does not require reversal of the conviction by entitling Monzon to withdraw his plea.

[2]Prior to the Supreme Court's decision in *Dominguez Benitez*, we required defendants seeking reversal based on a Rule 11 error to prove only "that the court's error was not minor or technical and that he did not understand the rights at issue when he entered his guilty plea." *See* 124 S. Ct. at 2338 (citing *United States v. Dominguez Benitez*, 310 F.3d 1221, 1225 (9th Cir. 2000)). In *Dominguez Benitez*, the Supreme Court overruled that standard and held that the reasonable probability standard applies. *Id.* at 2341-42.

ing to show that a misunderstanding was inconsequential to a defendant's decision, or evidence indicating the relative significance of other facts that may have borne on his choice regardless of any Rule 11 error." *Id.* at 2341 (citation omitted).

**[3]** The inquiry shall include "the overall strength of the Government's case and any possible defenses that appear from the record." *Id.* The Court further explained:

> The point of the question is not to second-guess a defendant's actual decision; if it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish. The point, rather, is to enquire whether the omitted warning would have made the difference required by the standard of reasonable probability. . . .

*Id.*[3]

**[4]** Unlike in *Dominguez Benitez*, where the Court reasoned

---

[3]We have applied *Dominguez Benitez* only once before in a published opinion. In *United States v. Arellano-Gallegos*, 387 F.3d 794 (9th Cir. 2004), the defendant challenged the waiver of appeal provision in his plea agreement. *Id.* at 796. We concluded that the district court violated Rule 11 by failing to ascertain whether the defendant's waiver of appeal was knowing and voluntary before acceptance of the plea. *Id.* at 797. We also cited to *Dominguez Benitez* and reasoned that "there is no evidence in the record that would demonstrate that Arellano knew he was waiving the right to appeal his *sentence*." *Id.* We observed that "[w]hat is in the record demonstrates that the magistrate judge and the form used by the district court omitted any reference to the right to appeal the sentence." *Id.* We also reasoned that, "[b]ecause this was not a technical violation of Rule 11, but rather a wholesale omission, and there is nothing elsewhere in the record to indicate that Arellano understood the right to appeal his sentence, his substantial rights were affected." *Id.* We have not heretofore applied *Dominguez Benitez* in a Rule 11 context in which a defendant contends that he was not sufficiently apprised of the elements of the offense to which he is pleading guilty.

that "it is hard to see here how the warning could have had an effect on Dominguez's assessment of his strategic position," 124 S. Ct. at 2341, the omission here likely affected Monzon's assessment of his strategic position. We have held that "[e]vidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)." *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004). The "in furtherance" element of the offense "turns on the intent of the defendant." *Id.* Conviction requires "proof that the defendant possessed the weapon to promote or facilitate the underlying crime." *Id. See also United States v. Mann*, 389 F.3d 869, 880 (9th Cir. 2004) (observing that "Congress has not made mere possession, when it occurs contemporaneously with drug manufacture, a strict liability crime").

**[5]** Here, once amended, the statement of facts in the plea agreement provided only that agents found 248.9 grams of heroin in the bedroom where Monzon was sleeping and a loaded gun in Monzon's bed. The plea agreement included no statement of Monzon's intent in possessing the gun. Indeed, Monzon specifically objected when the district court asked him if he in fact possessed the gun in part to protect the drugs found in his bedroom: "No. That's not it. I just had it because somebody sold it to me cheap." When asked to explain why he had the gun, Monzon explained, "Because I always liked them and they sold it to me for cheap and, you know, I just bought it. I didn't buy it because of the drugs. It doesn't have anything to do with that."

**[6]** Under *Krouse*, the mere fact of Monzon's possession of the gun at the scene of the drug trafficking crime is insufficient to support the "in furtherance" element. *See Krouse*, 370 F.3d at 967. Unlike in *Dominguez Benitez*, where the defendant's plea to drug possession was supported by evidence of a controlled drug sale to an informant and a confession, *see* 124 S. Ct. at 2341, it is unclear whether the government

would have been able to prove the "in furtherance" element beyond a reasonable doubt at trial, especially given Monzon's explanation of his reason for possessing the gun. And, unlike in *Dominguez Benitez*, where the Court observed that, given the evidence, "one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial," *id.*, it appears that Monzon might have been able to avoid conviction on the § 924(c) charge had he gone to trial.

Further, it appears that Monzon was unaware that the amended statement of facts he agreed to was insufficient to support the "in furtherance" element of 18 U.S.C. § 924(c). The Magistrate Judge did not inform Monzon that the statement of facts did not demonstrate all the elements of the § 924(c) charge, and it appears that Dominguez's counsel, in recommending that Monzon accept the plea agreement, also was unaware of the insufficiency of the factual basis. Thus, neither Monzon nor his attorney, nor indeed the Assistant United States Attorney or the district court, understood — as the government now concedes — that there was no factual basis for Monzon's plea and that the government's evidence, if presented at trial would show "[s]imply that he had [the gun] in his possession in the bedroom with the drugs." As in *Arellano-Gallegos*, 387 F.3d at 797, "there is nothing elsewhere in the record" to indicate that Monzon understood that the evidence might not support the § 924(c) charge.

**[7]** Given the evidence in the record of Monzon's prior equivocation in deciding whether to accept the plea agreement, and given the absence of evidence showing that Monzon intended to possess the gun "in furtherance" of his drug trafficking crime, it is reasonably probable that Monzon would have gone to trial on the § 924(c) charge absent the Rule 11 error. A review of the entire record shows a reasonable probability of a different result, "sufficient to undermine confidence in the outcome of the proceeding." *Dominguez Benitez*, 124 S. Ct. at 2340. The Rule 11 error here "seriously

affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. We therefore reverse Monzon's conviction for violation of 18 U.S.C. § 924(c) and remand with instructions to vacate Monzon's plea and sentence, and to afford Monzon the opportunity to enter a new plea.

## 2.   Safety Valve Reduction in Sentencing

Monzon contends that, absent a conviction for possession of a gun in furtherance of a drug trafficking crime, he would be eligible for a safety valve reduction in his sentence pursuant to 18 U.S.C. § 3553(f). Because Monzon was convicted of the gun charge, he did not raise, and the district court did not consider, application of the safety valve provision under 18 U.S.C. § 3553. We therefore decline to reach this issue. Upon remand, the district court will have the opportunity to consider in the first instance whether to apply the safety valve provision.

### CONCLUSION

The district court's Rule 11 error affected Monzon's substantial rights because there is a reasonable probability that, absent the error, Monzon would not have pleaded guilty to the § 924(c) charge. The judgment of conviction on Count 21 is reversed and the case is remanded to the district court for further proceedings consistent with this opinion. Further, because the sentencing court should "be free to consider any matters relevant to sentencing," we vacate the sentence as to Count 20 and remand that count for resentencing. *See United States v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en banc).

**REVERSED and REMANDED.**

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent.

The majority properly frames the issue before us. In order to obtain a reversal of conviction, Monzon must show a reasonable probability that but for the district court's Rule 11 error, he would not have pled guilty to Count 21. *Dominguez Benitez*, 124 S. Ct. at 2338-39. Based on Monzon's prior equivocation in accepting the plea agreement and the absence of evidence to support the "in furtherance" element of Count 21, the majority concludes it is reasonably probable that Monzon would have gone to trial on Count 21 and, therefore, finds reversible error. I disagree with the majority's premises and conclusion.

The majority assumes that if Monzon had wanted to proceed to trial on Count 21, the government would have allowed him to do so without disturbing the dismissal of Count One and his guilty plea to Count 20. This simply ignores the nature of the plea-bargain process. In exchange for Monzon's guilty plea to *both* Counts 20 and 21, the government dismissed Count One, which carried a ten year mandatory sentence. A conviction on all three counts would have resulted in a mandatory minimum prison sentence of 15 years. Thus, by entering a plea agreement, Monzon avoided the possibility of five additional years in prison if convicted on Count One, while the government secured a conviction on Counts 20 and 21. It is simply unreasonable to assume that the government would have agreed to dismiss Count One in exchange for just one guilty plea (Count 20), and then proceed to trial on Count 21 alone.

Moreover, although Monzon claimed that but for the conviction on Count 21 he would be eligible for a safety-valve reduction in his sentence, his admitted possession of a firearm in conjunction with the drug offense arguably prevents him from qualifying. Title 18 U.S.C. § 3553; *United States v. Nel-*

*son*, 222 F.3d 545 (9th Cir. 2000); U.S. SENTENCING GUIDE-LINES MANUAL § 5C1.2(a)(2). In my view, this considerably weakens Monzon's claim that he suffered prejudice as a result of the district court's Rule 11 error. Given these consider-ations, I would not find reversible error in this case.

Even if there were reversible error, the appropriate remedy would be to place the parties in the same position that they were in before entering the original plea agreement. Thus, Monzon should be allowed to withdraw his plea in its entirety and either proceed to trial on all three counts or attempt to negotiate a new plea agreement with the government. The majority's remedy effectively dismantles the plea agreement, parses out for remand the conviction on Count 21 and the sen-tence on Count 20, and leaves intact the dismissal of Count One. This permits Monzon to enjoy the benefits of the origi-nal plea agreement, while forcing the government to re-negotiate new terms from a weaker bargaining position. I do not read *Dominguez Benitez* to require this sort of windfall remedy for plain error under Rule 11.